So we'll turn to the first case before us, which is Lee v. Lynch. Thanks. Good morning, Your Honors. May it please the Court, Gary Yerman on behalf of Petitioner Ms. Lee. Twenty years ago, Ms. Lee was forced to undergo an abortion simply because she had previously had a male child. In order to undergo this abortion, her husband was detained and beaten. Ms. Lee turned herself in, her husband was released, and Ms. Lee was forced to undergo this abortion. Later on, she was fined between $30,000 and $40,000 RMB. After detailed testimony regarding this incident, as best as my client could recall, the immigration court found her not credible on a few reasons, the main one being that her testimony was inconsistent with the asylum officer's paraphrased notes, which were admitted into court. No verbatim account or transcript of my client's asylum interview was provided. The asylum officer was not present for cross-examination or questioning, and this alone violated my client's due process rights, and it alone is not enough for a negative credibility finding because it was inherently not reliable. Paraphrased notes are just not enough to find an inconsistency with direct, accurate, detailed testimony. There was also some allegations that there was an inconsistency between some of the dates, whether it being March 15th or March 22nd, April 1st or April 15th. We're referring to a forced abortion, the killing of her husband, and I don't think that a few days that were stated differently between one interview, possibly between one interview and another, is enough for a negative credibility finding. And so if this court agrees that the credibility finding was legally erroneous, we ask that the case be remanded to the immigration judge with instructions to follow this circuit's precedent. I've reserved some time, unless the court has any... I wanted to ask about the second grounds, the fear of future persecution because of her... CDP. Yeah, CDP. Supposedly she got some calls from the Wenzhou People's Association. What is that? Wenzhou is the province that the respondent is from in China. Technically it's called Zhejiang, and that association is an association that exists in each province in China, and that association has contacts with Wenzhou Association here in the United States, just like the Fuzhou Association in China has contacts with the Fuzhou Association here in the United States. Thank you. I've reserved my time. Does Judge Winter have any questions? No, I'm done. Oh, thank you. Thank you very much, Mr. Ewing. Ms. Vanderstar. Good morning, Your Honors. May it please the Court. My name is Thankful Vanderstar. I represent the Attorney General of the United States. There are three issues in the case before this Court today, the first of which is whether the record compels reversal of the adverse credibility determination. based on the petitioner's past persecution claim under China's family planning policy, and the answer to that question is no. The second issue is whether the record compels reversal of the agency's determination that the petitioner failed to establish an objectively reasonable well-founded fear of future persecution based on her membership and activities with the China Democracy Party here in the United States. The answer to that question is also no. Finally, the third issue is whether this Court should review the petitioner's unexhausted procedural due process claim with regard to admission of the asylum officer's notes and the assessment to refer and the immigration judge's reliance thereon in finding the petitioner not credible, and the answer to that question is also no. I'd like to start with the adverse credibility determination. There were five bases for the immigration judge finding the petitioner not credible, and under this Court's precedent, this Court gives particular deference to adverse credibility determinations and in particular looks at... In what way? How are we different from any other circuit? Well, actually, the Court is no different from any other circuit in giving particular deference to adverse credibility determinations. They were required by statute. Correct. That's correct. And because this case is covered by the Real ID Act in particular, that has broadened the scope of what an immigration judge may rely on in finding a petitioner not credible. Things that are seemingly minor, things that seemingly do not go to the heart of the asylum claim, those are all fair game. And what we have here is accumulation of five different reasons. Ms. Lee told her story three different times in her written statement to the asylum officer and then in her asylum hearing, and details came out differently depending on when she was telling the story. And I'd like to note in particular that the differences and inconsistencies were not consistent, meaning it wasn't that she left everything out of her written statement and then told everything to the asylum officer and told the same thing in her testimony, or that she told everything in her written statement and left things out at either being interviewed by the asylum officer or in her testimony. It was kind of all over the place. Let me ask you this. Suppose we find that the IJ had made a mistake about the fine she had to pay, that there really was no inconsistency in her statement on that point, then what do we do? Then I think the court would look at the remaining factors and assess whether the cumulative effect of the remaining factors would be sufficient, that a reasonable fact finder could have found the cumulative effect consequential enough to find Ms. Lee not credible. I mean, what we're engaging in here is not a, well, what do we think, and then if that's different from what the agency found, then the court reverses. It's what could a reasonable fact finder have found? And I may prefer a different inference to be drawn from an inconsistency. The court might prefer a different inference, might think, well, it could be this, it could be that. So when we have a sort of, but we don't know what to believe, then as long as the agency gave specific and cogent reasons for all of the findings, which the agency did here, and gave specific and cogent reasons for rejecting the petitioner's explanations, then the court must uphold the adverse credibility determination. As I see my time is running short, I would like to turn to the China Democracy Party claim. I think the biggest difference here between this case and a lot of this court's cases, I mean, I found pretty easily at least a dozen cases, most of them unpublished but a few published, where very similar claims have been rejected by this court. Someone who joined the CDP in the United States and was kind of a low-level participant and had not yet returned to China. Here we do have the telephone calls that she claimed that she received. And there was some discussion about this association with Mr. Yerman, and I want to point out that there's no evidence in the record as to what this association is. There's no evidence in the record as to exactly what this person said to Ms. Lee when he called her. In fact, while we have to believe that Ms. Lee said that the person told her he was from this association, we don't have to believe that he was telling the truth. We have no way of knowing that, and we have no way of knowing what is the relevance of this association. Furthermore, this person— But the BIA didn't go that way. That's correct. Okay, that's correct. Furthermore, the caller did not say anything to the petitioner about any threats, any harm that she might face were she to return to China. In my remaining few seconds, I also want to just point out to the court that the court should not address the petitioner's procedural due process claim because she failed to exhaust it for the agency. She neither objected during the hearing to admission of the evidence— Did she have counsel? She did have counsel, yes, and nor did she raise the issue in her appeal to the board. If there's nothing else— Mr. Uhrman has reserved two minutes. Thank you, Your Honors. Your Honors, we asked this court to overturn the IJ's decision because there's clear error. There's clear error in the fact that the IJ relied—overly relied on asylum notes that were paraphrased. And there's clear error in that based upon the petitioner's family members not being persecuted in China, the IJ found that my client didn't have a reasonable possibility of future fear. That's clear error because both go contrary to this court's precedent decision. It is irrelevant whether or not family members who are not CBP members are being viewed by the government. And therefore, we ask this court to send this case back to the IJ, to ask the IJ to follow this court's precedent in finding that my client has met her burden and was credible in her asylum claim, at minimum her claim for withholding if there was a one-year issue, that the court will decide if it goes back to the IJ. What are you relying on to show that people who joined CDC at a low level, when they go back to China, are persecuted? Well, I think what we have to rely on is, in general, as the country condition reports, that state that this is simply a one-party political system and any rise or any aversion or attempt to provide an alternative to the one-party system is frowned upon significantly by the Chinese government. So the argument has to be in conjunction with the country reports and the particular actions of the petitioner. Our client is claiming that her actions were brought to the attention of the Chinese government, so she's on the radar. And we do not want to send anybody back to be the canary in the mine. Did she base her claim that her actions were brought to the attention of the Chinese government on? She said that because of the three articles that she wrote using her regular name. After those articles were published, she received phone calls, three of which she accepted. Okay. Thanks. Thank you very much. We'll reserve the decision.